```
 1  TODD BLANCHE
    Deputy Attorney General
 2  BILAL A. ESSAYLI
    First Assistant United States Attorney
 3  ALEXANDER B. SCHWAB
    Assistant United States Attorney
 4  Acting Chief, Criminal Division
    KEVIN J. BUTLER (Cal. Bar No. 329129)
 5  Chief, Major Crimes Section
    JENA A. MACCABE (Cal. Bar No. 316637)
 6  Deputy Chief, Major Crimes Section
    Assistant United States Attorneys
 7       1300 United States Courthouse
         312 North Spring Street
 8       Los Angeles, California 90012
         Telephone: (213) 894-6495/5046
 9       Facsimile: (213) 894-0141
         E-mail:    kevin.butler2@usdoj.gov
10                  jena.maccabe@usdoj.gov

11  Attorneys for Plaintiff
    UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>PETER ARAFILES, JR.,<br><br>        Defendant. | No. CR 24-519-HDV-3<br><br>GOVERNMENT'S SENTENCING MEMORANDUM FOR DEFENDANT PETER ARAFILES, JR.<br><br>Hearing Date: February 26, 2026<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>                  Hon. Hernán D. Vera |
|---|---|

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Kevin J. Butler and Jena A. MacCabe, hereby files its sentencing memorandum for defendant PETER ARAFILES, JR.

//

//

This memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 9, 2026          Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

      /s/
KEVIN J. BUTLER
JENA A. MACCABE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant PETER ARAFILES, JR. ("defendant") took part in a violent, armed kidnapping of a stranger in Los Angeles County. To his credit, he owned up to most of his conduct immediately upon arrest and then fully owned up to his conduct when he entered into his plea agreement. While his crime is inexcusable, the Probation Office provides mitigating context for defendant's actions. Consistent with its obligations in the plea agreement, the government recommends a low-end sentence of 151 months' imprisonment, followed by five years' supervised release, a $100 special assessment, no fine, and restitution if defendant's victims so request.

**II.  DEFENDANT'S CRIME**

In 2023, defendant and his co-conspirators agreed to rob and kidnap victim S.S. Defendant and his co-conspirators developed a plan to and did travel from Sacramento, California, to Los Angeles County, California, to rob and kidnap victim S.S. In committing and in furtherance of the kidnapping, defendant and his co-conspirators utilized multiple means, facilities, or instrumentalities of interstate or foreign commerce, including cellular telephones that they communicated on throughout the kidnapping to provide updates to each other, motor vehicles that they traveled with and without the victim in throughout the kidnapping, and interstate highways that they drove on before, during, and after the kidnapping.

Specifically, on October 27, 2023, defendant and his co-conspirators traveled to Los Angeles County to commit the robbery and kidnapping. That morning, defendant traveled to victim S.S.'s residence to scout it for the kidnapping, robbery, or burglary. At

approximately 5:00 p.m., defendant and his co-conspirators committed the kidnapping of victim S.S. at victim S.S.'s business.  There, two kidnappers, both armed with firearms, approached victim S.S. and demanded money, gold, and jewelry from victim S.S., while one kidnapper repeatedly struck victim S.S. in the head.  The kidnappers then secured victim S.S.'s hands behind his back with zip-ties, duct-taped his turban over his face, demanded $100,000 or more from him, and threatened to kill him if he did not comply.  The kidnappers then lifted victim S.S. into the backseat of a vehicle and drove away.

After some time, the driver -- another co-conspirator -- stopped the vehicle for two kidnappers to exit.  The kidnappers demanded and received the garage code from victim S.S. while continuing to strike victim S.S. in the head with a firearm.  Eventually, the kidnappers took victim S.S.'s phones, including his work phone, and threw them out the window of the car while driving on the Interstate 5 Highway, as defendant and a co-conspirator went to victim S.S.'s home and burglarized it.  Finally, the kidnappers abandoned victim S.S. at a location near the Pyramid Lake Recreation Area.

**III. GUIDELINES CALCULATIONS**

The government, defendant, and the Probation Office agree on all the Sentencing Guidelines calculations.  (Compare Plea Agreement ¶¶ 4.d, 15, with PSR ¶¶ 33-48.)  With a total offense level of 31 and criminal history category of IV, defendant's Guidelines range is 151 to 188 months.  (PSR ¶ 125.)

2

**IV.   GOVERNMENT'S RECOMMENDED SENTENCE**

   **A.   Imprisonment**

Balancing the mitigating and aggravating factors for defendant,[1] a low-end sentence of 151 months' imprisonment is appropriate, reasonable, and not greater than necessary, in light of all the factors the Court must consider under 18 U.S.C. § 3553(a).

In aggravation, defendant received multiple felony convictions before committing the kidnapping in this case, violated his probation terms in one of those other cases, and even received a 32-month prison sentence previously. (PSR ¶¶ 53–55.) He currently has two active no-bail arrest warrants against him for other violent crimes. (Id. ¶¶ 59–60.) None of that deterred him from committing this kidnapping. The nature and circumstances of the kidnapping also illuminate the reason for the Guidelines figures for kidnappings generally and why the Court should not vary downward in this case.

The mitigating circumstances, on the other hand, support a sentence at the low end of the Guidelines. Most of the mitigation is sensitive, so the government incorporates by reference the Probation

---

[1] The government respectfully objects to the Probation Officer's comment that defendant should be sentenced similarly to certain co-defendants. (See Recommendation Letter at 7.) Those co-defendants have not even been convicted, let alone had their PSRs prepared. Moreover, "the district court [must] actually and adequately consider[] the factors necessary to insure that each individual defendant [is] assessed and sentenced as an individual." United States v. Barker, 771 F.2d 1362, 1365–66 (9th Cir. 1985). Defendant here is differently situated from his co-defendants. For example, defendant entered into a plea agreement with the government promising to recommend a low-end sentence. He is also entitled to three points for acceptance of responsibility. He also is not charged with a mandatory minimum consecutive sentence of seven years' imprisonment. Even his conduct in planning this crime is different from certain co-defendants', as will be abundantly clear to the Probation Office and the Court if and when the co-defendants face sentencing. Finally, defendant's own history and characteristics under 18 U.S.C. § 3553(a)(1) are different from his co-defendants'.

3

Office's summary in its Recommendation Letter.  Of a non-sensitive nature, defendant confessed in his post-arrest interview and fulsomely admitted his conduct in his plea agreement, which saved the government resources in needing to prepare for trial.

The recommended 151-month sentence is necessary to reflect the seriousness of defendant's crime, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.

### B.   Supervised Release

Given the seriousness of defendant's crime here, his criminal history, including a probation revocation, a prior protective order against him, and his pending violent-crime charges in other cases, the imposition of a five-year term of supervised release would provide needed additional incentive for defendant to refrain from committing further crimes.  (See, e.g., PSR ¶¶ 53–55, 59-60, 85.)  A five-year term of supervised release, with the terms and conditions recommended by the Probation Office, is sufficient, but not greater than necessary, to protect the public and deter future criminal conduct.[2]

### C.   Restitution

The Mandatory Victim Restitution Act of 1996, 18 U.S.C. § 3663A, applies in this case and requires the Court to order defendant to make restitution to any victim.  For purposes of restitution, a "victim" is a person "directly and proximately harmed as a result" of the offense.  18 U.S.C. § 3663A(a)(2).  The government will submit

---

[2] The government recommends that the Court, at sentencing, incorporate by reference and impose the standard conditions of supervised release enumerated in Second Amended General Order 20-04.

4

any restitution requests it receives to the Court, the Probation Office, and defendant.

**V.      CONCLUSION**

For the foregoing reasons, the Court should impose a low-end sentence of 151 months' imprisonment, followed by five years' supervised release, a $100 special assessment, no fine, and restitution if defendant's victims so request.